[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16149
Non-Argument Calendar
_____

Agency No. A095-709-781

BI YING LIAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 6, 2013)

Before MARCUS, JORDAN, and DUBINA, Circuit Judges.

PER CURIAM:

Bi Ying Lian, a native and citizen of China, petitions for review of an order

of the Board of Immigration Appeals denying her motion to reopen her removal

proceedings based on changed country conditions. More than four years after her final order of removal, Ms. Lian filed a motion to reopen based on changed country conditions. After converting to Christianity in 2011, she argued that she could not return to China based on that country's persecution of unregistered Christian churches. The BIA declined to reopen her proceedings *sua sponte* and determined that she failed to show changed country conditions sufficient to excuse her untimely motion.

On appeal, Ms. Lian acknowledges that "motion[s] to reopen [must] be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). She, however, argues that the BIA should have considered her untimely motion, which was filed more than four years after the entry of her removal order, by exercising its *sua sponte* authority to reopen cases under 8 C.F.R. § 1003.2(a). In the alternative, she argues that the BIA abused its discretion in failing to consider her motion under the changed circumstances exception, which provides that "[t]here is no time limit on the filing of a motion to reopen" if the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii).

2

After review of the administrative record and consideration of the parties' briefs, we dismiss the petition in part and deny the petition in part.

I

Ms. Lian acknowledges that binding circuit precedent prohibits us from reaching her challenge to the BIA's refusal to reopen her proceedings *sua sponte* under 8 C.F.R. § 1003.2(a). *See Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008) (holding that this Court lacks jurisdiction to review decisions of the BIA refusing to reopen immigration proceedings *sua sponte*). Nonetheless, Ms. Lian urges us to overrule *Lenis* as "improperly reasoned in light of the Supreme Court's decision in *Kucana* [*v. Holder*, 558 U.S. 233 (2010)]." Br. of Pet'r at 19. Yet she plainly admits, as she must, that "*Kucana* does not compel the conclusion that *Lenis* . . . should be overruled." Br. for Pet'r at 24. Indeed, not only did the Supreme Court in *Kucana* address a different statute, 8 U.S.C. § 1252(a)(2)(B)(ii), than the one at issue here, but the Court also specifically "express[ed] no opinion on whether federal courts may review the Board's decision not to reopen removal proceedings *sua sponte*." *Kucana*, 558 U.S. at 251 n.18. Her admission is thus fatal to her argument on appeal. Because neither this Court sitting *en banc*, nor the Supreme Court's decision in *Kucana*, has overruled *Lenis*, we are bound to follow its holding. *See, e.g.*, *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008). We therefore dismiss the portion of Ms.

Lian's petition challenging the BIA's refusal to exercise its *sua sponte* authority to reopen the removal proceedings for lack of subject-matter jurisdiction.

## II

We review the denial of a motion to reopen for an abuse of discretion, limiting our review to whether the BIA exercised its discretion in an arbitrary or capricious manner. *See Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). Ms. Lian bears a heavy burden under this standard, as motions to reopen removal proceedings are particularly disfavored. *Id.*

Ms. Lian has not carried her burden. Her principal argument is that the BIA failed to address the "voluminous materials" she submitted showing that China's religious persecution of unregistered Christian churches and their members had increased since her hearing in 2006. In concluding that Ms. Lian had not shown changed country conditions, however, the BIA was not required to specifically address each piece of evidence. *See Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) ("Where the BIA has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.") (internal quotation marks omitted). Nonetheless, the BIA must "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* After a

4

thorough review of the record, we find that the BIA has given reasoned consideration to Ms. Lian's petition and has made more than adequate findings to support its determination that her petition was untimely.

The BIA determined—after considering the State Department's Country Reports and International Religious Freedom Reports, the Congressional-Executive Commission Annual Reports, and news articles submitted by Ms. Lian—that Ms. Lian failed to show a change in country conditions since the time of her original hearing in 2006. Specifically, the documents presented by Ms. Lian showed that the Chinese government's mistreatment of unregistered Christian groups has been a longstanding problem, and the current restrictions on religious groups have been a continuation of the same or similar conditions that existed at the time of Ms. Lian's hearing. For example, these documents indicated that, at the time of Ms. Lian's hearing in 2006, the Chinese government was already subjecting unregistered churches and their members to threats, repression, harassment, detention, and, at times, physical abuse. In addition, while the more recent reports indicated that the Chinese government has continued to repress unregistered religious groups, they also reported that the Chinese government has started to allow increased freedom for some of these groups and their members. For example, the documents showed that since 2005, the Chinese government has publicly acknowledged that family and friends have the right to meet at home for

5

worship, prayer, and Bible study without being registered with the government.  In light of this evidence, the BIA did not act arbitrarily or capriciously in concluding that Ms. Lian had not shown changed country conditions.[1]

Because the BIA did not abuse its discretion in denying Ms. Lian's motion to reopen, it is unnecessary for us to consider whether Ms. Lian established a *prima facie* case for relief based on her religion.  *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001) ("At a minimum, there are at least three *independent* grounds upon which the Board may deny a motion to reopen: 1) failure to establish a prima facie case; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion.") (emphasis added).

### III

Ms. Lian's petition is dismissed insofar as it challenges the BIA's refusal to reopen the proceedings *sua sponte*, and denied insofar as it challenges the BIA's denial of the motion to reopen based on changed country conditions.

**PETITION DISMISSED IN PART AND DENIED IN PART.**

---

[1] Ms. Lian's conversion to Christianity in 2011 does not factor into this analysis because changed personal circumstances do not authorize the untimely filing of a motion to reopen. *See Jiang*, 568 F.3d at 1258.